IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff | : |
| v. | : Criminal Action No. 07-111-JJF |
| KWAN MILLER, a/k/a, KENNETH MILLER | : |
| Defendant. | : |

### MOTION AND ORDER FOR SALIVA SAMPLES FOR DNA TESTING

**COMES NOW** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Martin C. Meltzer, Special Assistant United States Attorney, and respectfully moves this Court for an Order directing defendant Kwan Miller a/k/a/ Kenneth Miller to provide forthwith saliva samples through the use of two buccal swabs applied by A.T.F. Special Agent Paul Gemmato, or his designee. In support of this motion, the United States avers as follows:

1. Kwan Miller was indicted by the Grand Jury for the District of Delaware on August 16, 2007, for possession of a firearm by a person prohibited, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

2. As set forth in the criminal complaint plead in this matter, on or about July 18, 2007 at approximately 11:15 P.M., Detective Fox of the Wilmington Police Department and Senior Probation Officer William Du Pont conducted an administrative search at the residence of Kwan Miller, a/k/a, Kenneth Miller ("Miller"). The search was conducted at 3000 N. Madison Street, Wilmington, Delaware. Miller is on probation from a felony conviction on January 25,

2005 for the Possession with the intent to Deliver a Narcotic Schedule II Controlled Substance.

During the search, the probation officer found a Kel-Tec model P11, 9mm Luger semiautomatic pistol serial number 123096 and a Marlin model 980 DL, 22 caliber bolt action rifle.

3.      On November 20, 2007, The Government was advised that a preliminary analysis of samples taken from the Kel-Tec model P11, 9mm Luger semiautomatic pistol proved positive for DNA. The found DNA appears to be typable, and the laboratory should be able to perform a comparison between the found DNA and a DNA sample taken from the defendant.

4.      The laboratory informed the Government that a sufficient DNA sample can be obtained from a saliva sample. According to the laboratory, in order to ensure a sufficient sample for scientific analysis, the saliva sample should be taken through the use of two buccal swabs applied to the inside of the defendant's cheek and gum line. This method ensures that the necessary cells for comparison purposes are obtained. Simple expectoration into a container cannot ensure a sufficient sample.

5.      If the DNA found on the Kel-Tec model P11 9mm Luger semiautomatic pistol is consistent with that of the defendant, it will provide additional relevant evidence linking the defendant to the offense. Conversely, if the DNA found on the Kel-Tec model P11 9mm Luger semiautomatic pistol is not consistent with that of the defendant, it will provide potential exculpatory evidence.

6.      The taking of a saliva sample implicates the defendant's Fourth Amendment interests. Under the Supreme Court's methodology set forth in Schmerber v. California, 388 U.S. 263 (1966), the Court may order an intrusion such as this if: (1) the ordinary Fourth

Amendment probable cause requirements are met; and (2) the type of intrusive procedure and the manner in which it is to be performed are reasonable. See United States v. Nicolosi, 885 F. Supp. 50, 53 (E.D.N.Y. 1995).

7. The Supreme Court has suggested that a proper assessment of the reasonableness criteria must balance two factors: (1) the extent to which the procedure may threaten the safety or health of the individual and the extent of the intrusion upon the individual's dignitary interests in personal privacy and bodily integrity; and (2) the community's interest in fairly and accurately determining guilt or innocence. See Winston v. Lee, 470 U.S. 753, 761-62 (1985); Nicolosi, 885 F. Supp. at 53. In Nicolosi, the district court concluded that the taking of saliva samples falls in the middle of the continuum of intrusions on individual dignitary interests between, on the one end, blood and other internal fluids which can only be obtained by extracting them from the body and, on the other end, hair and handwriting, which are outwardly manifested in the public domain. See 885 F. Supp. at 55.

8. The Government respectfully submits that the Court should adopt this conclusion and find that the extent of the intrusion necessitated by a saliva swab is reasonable. The taking of a saliva sample by a buccal swab is less intrusive than a blood test, as performing a saliva swab does not require piercing of the skin, and may be conducted safely outside a hospital environment with a minimum of embarrassment or inconvenience. See Skinner v. Railway Labor Executives Association, 489 U.S. 602, 625 (1989) (comparing breath and blood tests). Moreover, providing a saliva sample is less of an intrusion upon the individual's dignitary interests than is a urine sample. Unlike the urine tests approved by the Supreme Court in Skinner, providing saliva does not require the subject to perform an excretory or other function "traditionally shielded by great

3

privacy." See id. at 626. Although similar in some respects, providing saliva "is not viewed with the same disfavor nor concealed behind closed doors as urinating; consider the commonplace sight of athletes expectorating on national television on a daily basis." Nicolosi, 885 F. Supp. at 55.

9.  DNA testing has the capacity to greatly assist the fair and accurate determination of guilt or innocence in this matter. Balancing this against the relatively less intrusive nature of the saliva swab procedure, the Government respectfully submits that the Court should find the procedure reasonable, and grant the requested Order based upon the probable cause found by the Grand Jury. See Nicolosi, 885 F. Supp. at 56.

11. The taking of saliva samples is non-testimonial in nature, and therefore would not violate the defendant's Fifth Amendment rights. See Gilbert v. California, 388 U.S. 263, 266-67 (1967); Schmerber v. California, 384 U.S. 757 (1966).

12. The Government has conferred with council for the defendant, Keir Bradford, Esquire, and she takes no position on this motion.

**WHEREFORE**, for the reasons set forth above, the United States respectfully requests an Order directing Kwan Miller a/k/a/ Kenneth Miller to provide forthwith saliva samples through the use of two buccal swabs applied by A.T.F. Special Agent Paul Gemmato, or his designee.

                                    Respectfully submitted,
                                    COLM F. CONNOLLY
                                    United States Attorney

BY: _____
        Martin C. Meltzer
        Special Assistant United States Attorney

Dated: November 27, 2007

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff | : | |
| v. | : | Criminal Action No. 07-111-JJF |
| KWAN MILLER, a/k/a, KENNETH MILLER | : | |
| Defendant. | : | |

## ORDER

AND NOW, this _____ day of _____, 2007, it is HEREBY ORDERED that the government's Motion for Saliva Samples for DNA Testing is GRANTED. The defendant is directed to provide forthwith saliva samples through the use of two buccal swabs applied by A.T.F. Special Agent Paul Gemmato, or his designee.

                                                  Honorable Joseph J. Farnan, Jr.
                                                  United States District Judge